## TULSA BOILER & MACHINERY CO. et al. v. SIMMONS et al.

No. 24241. Opinion Filed April 25, 1933.

Cheek & Lee, Jas. C. Cheek, and Frank E. Lee, for petitioners.

J. Berry King, Atty. Gen., Rob't. D. Crowe, Asst. Atty. Gen., and Harper & Lee, for respondents.

CULLISON, J. This is an original proceeding in this court by the Tulsa Boiler & Machinery Company, and its insurance carrier, the Commercial Casualty Insurance Company, a corporation, to review an order and award of the State Industrial Commission made on October 28, 1932, in favor of Steve B. Simmons, claimant.

The record discloses that claimant received an eye injury August 5, 1931, while working for the Tulsa Boiler & Machinery Company. On August 14, 1931, said employer filed its notice of the injury with the Industrial Commission. On August 28, 1931, claimant filed his notice of injury and claim for compensation with the Commission, alleging permanent total loss of vision of the left eye caused by having been struck in the left eye by a piece of burr from a manhole cover. On said date, the insurance carrier filed its report showing the voluntary initial payment of compensation at $17.31 per week. Application for a hearing was made to the Commission by claimant, on January 7, 1932, alleging loss of vision of the left eye, and that the right eye had become affected. Four hearings were had in the matter, and on October 28, 1932, the Commission entered its order, awarding claimant compensation at the rate of $17.31 per week, for a period of 270 weeks, by reason of its finding that claimant's accident while working for his employer had completely destroyed the left eye and caused an 8 per cent. permanent partial loss of vision in the right eye. In addition to this portion of the award for claimant's 54 per cent. permanent total disability, the award also allows compensation for temporary total disability from date of accident, August 5, 1931, to November 14, 1931, at $17.31 per week.

Petitioners submit two propositions in their proceeding to review said award: (1) That there is no competent evidence in the record to sustain the finding by the Commission that the impaired vision in the

right eye of the claimant was caused by the accident; (2) that there is no evidence to sustain the award directing the payment of temporary total disability to November 14, 1931.

The record discloses that claimant testified he had good eyes prior to the accident, and that, since the accident resulting in the loss of his left eye, his right eye had grown weaker. Claimant's doctor, J. W. Shelton, testified that he did not, of his own knowledge, know the condition of claimant's eyes prior to his examination of claimant December 22, 1931. He testified that he obtained from claimant the history of an accident resulting in enucleation of the left eye, and that claimant's right eye showed twenty-thirty (20/30), or about 8½ per cent. loss of vision. The doctor, assuming claimant's vision good prior to date of accident, in answer to a hypothetical question, over objection, was permitted to answer that, from the description contained in the question, claimant's loss of vision in the right eye was probably due to the accident to the left eye, as a result of sympathetic irritation, but testified that there was no pathology or structural change discoverable in the eye. At a later hearing, Dr. Shelton testified, in answer to question, that if the claimant had been examined by a physician on February 23, 1930, and on February 15, 1931, examinations revealing vision of about 20/30 (approximately 8½ per cent. loss) in the right eye, such would alter his opinion as to the cause of the disability to the right eye, and that under those conditions the slight impairment of vision in the right eye existed prior to the accident of August 5, 1931.

Dr. R. Q. Atchley testified that he examined claimant's eyes prior to the accident, and that on February 23, 1930, and February 15, 1931, claimant's right eye manifested vision of 20/30 (about 8½ per cent. loss).

Dr. James C. Braswell, who treated and operated on claimant, testified that on the date of the accident he examined claimant's right eye and found vision of 20/30 (about 8½ per cent loss), and that the vision in claimant's right eye remained the same up to and including the date he discharged claimant from treatment. That the diminished vision of the right eye was not attributable to the injury to the left, having pre-existed the injury. Dr. Shtlton, upon whose testimony claimant relied, further testified that if claimant was examined by a specialist on the date of the injury, and on that date the right eye manifested a vision of 20/30 (about 8½ per cent. loss), it would not be the result of sympathetic irritation. He also testified that the physician who had care of the patient would be able to tell whether or not any sympathetic trouble developed. That the same was an easy thing to discover. The record also contains testimony that 8½ per cent. loss of vision in an eye is so slight as to be almost normal vision.

We are impressed with the similarity of the foregoing facts to those involved in the case of Indian Territory Illuminating Co. v. Hendrixson, 158 Okla. 176, 13 P. (2d) 137. In that case the claimant gave a history of good eyesight prior to the injury, and testified that following the accident his eyes had grown weaker. Claimant's doctor testified that he had recently examined claimant, and that, from his examination and the history of the accident given him by claimant, he found a 23 per cent. loss of vision in each eye, and concluded that the irritation was probably caused by the rays of the welding torch, but that claimant's eyes did not focus properly, and that this would have some effect upon the vision. Another doctor testified that he had examined claimant's eyes some two years prior to the injury, and found a loss of vision of 20/30 in each eye at that time, which was equivalent to 8 or 8½ per cent. This court, after holding that the record did not show competent evidence reasonably tending to show a compensable injury to the left eye, and vacating that portion of the award based on an injury to both eyes, held that the record showed an 8 or 8½ per cent. loss of vision in the right eye at the time he was examined two years prior to the injury. The court held that the percentage of the loss of vision in the right eye due to the injury could not have been greater than the difference between the percentage of the loss prior to the injury and the percentage of the loss after the injury. The Commission was ordered to enter an award to claimant for 15 per cent. loss of vision in the right eye, the same being the difference between claimant's vision before (8 per cent.) and after (23 per cent.) the injury.

In the case at bar, the record shows that claimant had an 8½ per cent. loss of vision on different examinations prior to the injury, and that said loss remained constant during the healing period for the injury to his other eye, and at the time of the hearings before the Commission had not in-

creased. Therefore, the difference between the percentage of the loss of vision in claimant's right eye prior to the injury (8½ per cent. loss) and the percentage of the loss after the injury (8½ per cent.) discloses no loss of vision in the right eye due to the accident, and that portion of the award based on an injury to both eyes is vacated. The record clearly shows that the accident resulted in 100 per cent. loss of claimant's left eye. Petitioners admit this fact. That portion of the award granting claimant 100 weeks' compensation at $17.31 per week for the loss of his left eye by reason of the accident, is sustained. Under petitioner's second proposition, supra, it is contended that the record contains no evidence to sustain the award directing the payment of temporary total disability from the date of the accident, August 5, 1931, to November 14, 1931. Petitioners' contention is that claimant should have been allowed temporary total disability compensation only to the date he was discharged by Dr. Braswell, October 6, 1931. We observe that the doctor testified he discharged claimant on October 6, 1931, while claimant testified that Dr. Braswell discharged him October 13, 1931. Howbeit, the record contains testimony that claimant's left eye pained him after he was discharged; that the artificial left eye bothered him; that the swelling in his face did not go down for a month thereafter, and that his head and eyes pained him for the same period of time. Claimant testified that he supposes he could have done light work on the 15th day of November, 1931. We think the Commission did not err in its finding as to the length of time that claimant was temporarily totally disabled.

The award is affirmed in part, and reversed in part.

SWINDALL, ANDREWS, McNEILL, OSBORN, BUSBY, and WELCH, JJ., concur. RILEY, C. J., and BAYLESS, J., absent.